Good morning, Your Honors, and may it please the Court, Patricia Young, representing appellant William Kirkpatrick, Jr. The majority opinion in this case was correct in every respect, and there's four key points I'd like to touch on. First, Mr. Kirkpatrick's waiver was required to be knowing, intelligent, and voluntary. We know this from Supreme Court case law, like Demosthenes v. Ball and Whitmore v. Arkansas, and we know this because this Court has applied that standard in Dennis v. Budge and Comer v. Shero. Now, what it means for a waiver to be knowing and intelligent is that the person waiving must have a full awareness of the nature of the right that he is waiving and the consequences of the decision to abandon it. Now, in this context specifically, where the waiver is of the right to proceed in a capital case, that means that Mr. Kirkpatrick had to appreciate the consequences of his decision. He had to understand the claims and wish to forego them, and he had to have a reason for not delaying execution. How do we review that? That's the second point, Your Honor. This Court reviews the knowing, intelligent, and voluntary standard de novo, and that's because it's a mixed question of fact and law. Why don't we review it under 2254E? 2254E1 only applies to pure questions of historical fact. Haven't we said otherwise on this Court? Excuse me? Hasn't our Court said otherwise? This Court has actually said that, in the context of a knowing, intelligent, and voluntary waiver, that it is a mixed question of fact and law. And that's in — But you said that we review that under 2254E, like elephant E. No, Your Honor. In both Moran v. Godinez and Campbell v. Wood, this Court had said it's a mixed question. However, even — Counsel, I'm not asking about mixed question. You realize I'm asking a different — making a different point under AEDPA, whether it's not a 2254E — E1, Your Honor. Yes. Yes. And are you saying it's not? I'm saying it is not, because — Counsel, what's your best authority for that? Again, in the — just in the context of a knowing, intelligent, and voluntary waiver in general, Moran v. Godinez and Campbell v. Wood — Okay. What about not in general? Okay. What about what we need to do here today, please? Yes. And in 2254E1 specifically only applies by its terms to questions of fact. And it is simply not a question of fact. However, even if this Court chooses to apply 2254E1, the presumption of correctness only applies when there's been an adequate fact-finding process. Okay. Let's talk about that. For my part, at least, that would be helpful for me. And as the State court referee in this case found, there was not an adequate fact-finding process for him to be able to conclude that the waiver in this case  Is his determination binding on the Supreme Court of California? It is not, Your Honor, but it is helpful to look at to show that he didn't even think — the person who was charged with the task of answering the question didn't even think that he had adequate facts to make this finding. He's a referee. Yes, Your Honor. And the California Supreme Court can either accept or reject the referee's findings, correct? This is true, Your Honor. Absolute discretion.  So then the real question is whether there's sufficient evidence in the — if AEDPA applies, if 2254E1 applies, which I think it does, the real question is whether there's any evidence from which the California Supreme Court can reasonably — not necessarily correctly, but reasonably — find the waiver was intelligent and knowing. And now, what's wrong with the California Supreme Court considering things like the letter itself? Dr. McEwen's testimony before the referee in which he thought he was intelligent and knowing, isn't that sufficient evidence? No, Your Honor. Now, there's nothing wrong with the California Supreme Court considering that evidence in the record, but even when you do consider that evidence, there's still clear and convincing evidence to get over any presumption of correctness. What is that? What is the clear and convincing evidence here that would rebut the presumption under 2254E1? Three points on that, Your Honor. First, there's no indication in the record that Mr. Kirkpatrick was aware of any of the claims in his petition that he was purporting to waive. And not only is there not an indication that he wasn't aware of them, there is actually evidence in the record that he did not know what was in his petition. He expressed his interest to the referee in winning a retrial based on a police report in which they purportedly purchased the murder weapon for $25 from a gang affiliate of Mr. Kirkpatrick. He knew about that claim. He talked about it with the psychiatrist. We didn't know. He knew about the factual basis, and he certainly indicated he wanted to pursue it. He talked at one point about hiring new lawyers, specifically African-American lawyers. Another time, he talked about it's clear he didn't like his lawyers, and he talked about pursuing it perhaps pro se. Did he know that that claim was in the exhaustion petition? He did not. And in fact, there are six claims based on that police report, and we know he didn't know it was in the exhaustion petition because he specifically asked the referee if it was in his petition, indicating he did not know. Kagan. A minute ago, Judge Bea asked you a question, and I want to make sure I understand your position, because if I understood your answer correctly, it surprised me. My understanding is that the Dr. McEwen, the psychiatrist, opined that he was competent, and that really isn't particularly challenged, and that his waiver was voluntary and that she made no opinion, gave no opinion about knowing and intelligence. So Dr. McEwen was not tasked with figuring out. I understand that, counsel, but please answer the question. This is a really intricate argument, so if you could stay focused on exactly what we're asking. Yes. Dr. McEwen did not. You are correct. Dr. McEwen did not opine on whether it was knowing and intelligent. I'm simply saying that if we were to look at the entire record, even the statements that Mr. Kirkpatrick made to Dr. McEwen do not demonstrate a knowing, intelligent and voluntary waiver. So to back up again, she opined competent and she opined voluntary, but she didn't opine on knowing or intelligent, and the referee said he couldn't opine on knowing or intelligent, if I'm understanding the record correctly. The referee did say he could not opine on knowing and intelligent. I do not recall that Dr. McEwen found voluntary. She found competency. The referee found voluntary. Yes, yes, but not Dr. McEwen. Okay. So where does that leave us? We've got this finding. To get back to Judge Bea's question, which I think is the pivot point in the argument, and Judge Wardlaw has asked you the same thing, we've got a finding by the California Supreme Court about knowing and intelligent in particular. What supports that finding, please? Three things. The missing, any information missing, I'm sorry, the record is devoid of any information. What supports the finding? Your Honors, it was the State's burden to show waiver by a preponderance of the evidence. I'm going to ask them, too. Right. But because there's not enough, there's not, a preponderance of the evidence does not show that there was a waiver. So it's really the lack of evidence here. Okay. Under E-1, and I'll take responsibility in part for this. I think our first opinion got it wrong. I think E-1 applies. And in E-1, we defer to the findings of the State court unless that, unless it is rebutted by clear and convincing evidence. So it is your burden to come forth with clear and convincing evidence to rebut that deference. So what is the, just give it to us if it's in there, okay? Well, the other point is that in order to prove a knowing and voluntary waiver, sorry, a knowing and intelligent waiver in this context, Mr. Kirkpatrick had to indicate that he wished to speed the process towards execution. And there is clear evidence in the record in his statements to both the referee during the status conference and to Dr. McEwen during the expert examination that he had no intention of speeding the process towards execution. Could you give us record sites and be really specific about that, please? Yes. That would be helpful. So E-R 1134, Mr. Kirkpatrick states, it is my intention to stay alive as long as possible. E-R 695, Mr. Kirkpatrick states that he is not asking to be executed. E-R. And when, who does he make that statement to, please? The last one at 695, this was Dr. McEwen testified to this in court, and the referee chimed in as well and said he made the, Mr. Kirkpatrick made the same statement to him. At 695, is he making the statement to the psychiatrist? That's my question. That's Dr. McEwen testifying that Mr. Kirkpatrick made that statement. So the answer is yes. Yes. Thank you. Okay. How can we take any of these statements at face value? Suppose we take a look at Mr. Kirkpatrick and say he's playing us, the way that Judge Kaczynski said in his dissent. I mean, he can say one thing one day and one thing another day. And he will use these different statements and different positions to stay alive as long as is possible, right? Including saying I want to be executed, and that will drag out the proceeding even more. Your Honor, that really underscores the necessity to have a colloquy where Mr. Kirkpatrick is brought. But it can't make him answer the questions. That's absolutely correct. And if Mr. Kirkpatrick is told if you actually intend to waive, you need to come into court to answer questions. Mr. Kirkpatrick did not come into court on two occasions after being told that, so he therefore ---- After being told, forgive me, after being told that if he did not show up, they wouldn't be able to find a knowing and intelligent waiver. They said if you actually intend to have your waiver considered, you need to come into court and answer questions. And then he didn't. He didn't. Twice. Twice. So what strikes me is I think Judge Bea's point, if it's Judge Bea's point, and I don't want to put words in his mouth, but I think this record can be read that Mr. Kirkpatrick is trying to run circles around the Court and not cooperating and delaying the process. That might be. What I'm very concerned about is what's going to happen to the constitutional standard for waiving ---- our standard, forgive me, for waiving a constitutional right. And what we have here, it seems to me, is an equivocal record, because I struggled to find support for the California Supreme Court's findings. So I'm ---- maybe we could pivot a bit. There's the ---- I don't know how to pronounce it. Is it the Fahey case? I've been pronouncing it Fahey. I'm not sure, Your Honor. Okay. We'll go with Fahey. The Third Circuit's case where they thought they had an equivocal record, where someone was doing what Judge Bea, and I'll say myself, was concerned about, changing their mind back and forth and back and forth. And the Court has to resolve that one way or another. So that Court said we have before us a record of equivocation. Is that what we have here? Your Honor, I'm ---- clearly, that's the way this Court is tending to go. But I do think that there's clear and convincing evidence that there was no waiver. When Mr. Kirkpatrick is saying he wants to stay alive as long as possible, that he wants to pursue his own litigation pro se, that does not indicate that he understands that he is giving up his right to do that. You shouldn't say that, think that, please, that the Court's going anywhere. I'm going to ask him hard questions, too. No problem. I'm trying to really tease this out, because it's a terribly important right. Can you distinguish the Fahey case? I think no. I think this case is right on point with Fahey. And there we had, you know, him going back and forth, saying ---- sending him letters that he wanted to waive, then sending him letters saying he didn't want to waive. At least in Fahey, though, the person did show up and did answer some questions under oath and then followed up by sending letters. Here, Mr. Kirkpatrick doesn't even come into court. And this behavior is consistent with what he did in district court as well. Kennedy, but that's part of his game, isn't it? He doesn't come into court. This would mean that if a man claims waiver and then refuses to come into court, then one can never determine whether the waiver was good or not. You could never have a trial in absentia, right? Not necessarily, Your Honor. There's two things that could have happened. When Mr. Kirkpatrick refused to show up, the California Supreme Court or the referee could have said, fine, then we're not considering your waiver and we're moving on. That's what happened in the district court. Exactly right. He tried this again in the district court. Right. And the district court said, if you don't show up, I'm not considering your waiver. And then did not. And did not. Do we have a case that says an element of procedural due process is that the person claiming waiver must be seen and his demeanor appreciated by the trier of fact? In Matta v. Johnson out of the Fifth Circuit, we do have the Fifth Circuit saying due process requires an on the record, under oath colloquy to answer those questions. Well, we don't have any binding authority on colloquy, as I understand it, that a colloquy is required. And short of a cell extraction order, they couldn't require this person to cooperate. And even if they had extracted him from his cell, they can't force him to answer the question. That's right. So I really struggle with what's wrong with the process the State adopted. It seems to me I don't know what else they could have done. Well, and that's exactly. Well, what they could have done is not accepted a waiver under these circumstances. Right. Okay. Different question, but I mean, just in terms of the process, when we talked, I think at the top of the hour, you were talking about the fact-finding process of the State Supreme Court, and maybe we rushed you through that. But I don't, I'll just tell you, I don't see anything infirm about the process that the California Supreme Court directed to be followed. Do you think we're missing something there? Well, there's a few things that could have been done. And when we were in district court, one of the suggestions there was to videoconference and to see in Quentin to have Mr. Kirkpatrick answer questions. A couple things in Dennis v. Budge, there were a few things that. So this isn't a question of do they have the best possible process. My question really is the process that the California Supreme Court directed, which is to appoint a referee, and they had this psychiatrist, and they thought there was going to be fact-finding about knowing and intelligent, and then he refused to cooperate. It doesn't seem to me that there's anything wrong with their, the process that they envisioned there. Well, with the process that they set out to pursue is correct. Okay. But they weren't able to complete that process, and therefore, they should never have reached a determination that the waiver was knowing and intelligent. I think that's different, and I don't mean to parse words, but it strikes me what you're really arguing is there's nothing wrong with the process, or at least I haven't heard you say there was, except what they did is adopt a finding that you think lacks factual support. No, Your Honor. And I'm sorry if I'm not being clear on this point, but when they said you need to have a reference hearing and you need to answer to the State court referee, you need to answer two questions, competency and whether the waiver was knowing, intelligent and voluntary, the second piece never happened. So, yes, I do have a, not, there's no problem with what the California Supreme Court ordered, but the problem is what failed to happen. Now, the fact that Mr. Kirkpatrick didn't show up. How is that different than what I, I'm not trying to be difficult, but I'm not sure how that's different than what I just asked you. I'm just saying. It sounds like you're not finding fault with the process that they envisioned except ultimately they entered a finding of fact that, well, ultimately, it's a mixed question of law and fact, but that the embedded findings of fact there about knowing and voluntary are unsupported by the record. And not just that they're unsupported by the record, but there was nothing, it's not as if a colloquy happened and Mr. Kirkpatrick simply didn't answer questions. The colloquy never happened.  That's not the court's fault. That's not an unreasonable fact-finding process. They can't make him answer those questions. They can't, and therefore, they shouldn't accept the waiver. And now, I see that the, I see that this is a struggle for courts in general, but it should really be guided by what the Third Circuit did in Fahy and say, look, it's not unsympathetic to state courts when faced with situations like this where you have a person who ostensibly waives and then retracts that waiver, but that does not absolve. Did he ever actually retract the waiver? See, that's one of the problems in reviewing all of these, the proceedings that happened. He knew that his case was back in state court precisely because when he filed his federal habeas petition, the district court there found several claims unexhausted. He knew he was back in state court to exhaust those claims so that he could, they could be heard by the federal court, and then he waives all those claims. He submits his waiver. So did he ever say, I want to take back my waiver and have the state court hear these claims, and then we can get back into federal court? No, Your Honor. He told Dr. McEwen that he wanted to pursue these claims. Yes, he did. But he never sent anything. So, again, Mr. Kirkpatrick's two-line handwritten pro se self-titled waiver form, that's presupposing that that piece of paper alone was a valid waiver, and it couldn't have been, because you can't tell from that piece of paper that it was. Kagan, you're veering off from Judge Wardlaw's question, and that's a really important question. He filed the one-line handwritten waiver, and I think your answer is he never filed anything else? That's correct. She's asking whether he ever withdrew that. And so what you've got is contrary statements in the record, and you've got contrary conduct, because he didn't show up for the hearing. But isn't it, Judge Wardlaw, correct that he never withdrew that piece of paper? He never filed anything else. That's correct. That's correct. And when Dr. McEwen asked him about the two-line waiver form that he sent in, he did disavow it and say he had no intention of discontinuing litigation, and he had no intention of speeding the process towards execution. But the waiver says unequivocally carry out the judgment of execution. It does, and that goes contrary to everything he said to both the referee and Dr. McEwen. So what's the answer to Judge Bea's question about this individual if he's trying to just throw sand in the gears and delay and prevent the process from going forward? And the California Supreme Court in this case could have stopped that, and by just saying if you're not going to participate, we're not going to find waiver, which is something that he ostensibly wanted in the first place. If he's requesting waiver, and the California Supreme Court says in order for us to give you what you want, you need to come in, he doesn't come in. The California Supreme Court doesn't need to give him what he wants. But they'd rule on the merits. Yes. Your Honors, unless there's any other questions right now, I'd like to reserve the remainder of my time for rebuttal. Are you still asserting the first two claims in this case in terms of the certified issue, the fact that the jury considered two non-statutory aggravating factors during the penalty phase? Yes, Your Honor. And I did choose to focus on the waiver issue since that was the subject of the majority opinion, but I am happy to pursue the certified claim and answer any questions on that front if the panel has any. So why don't you argue that? Because I think we're all focused on the waiver issue, but I think this time around we might have to discuss the certified issue and the opinion. All right. The certified issue is that Mr. Kirkpatrick's jury was instructed that they consider as aggravating factors two pieces of evidence that are non-statutory aggravating factors in California. And that was threats to property and threats and poisoning of dogs. Now, there's no dispute that the California courts were wrong to instruct jurors that they could consider those as aggravating factors. Now, the question really centers on was this harmless error. And what did the California Supreme Court say about that? About harmless error? Yes.  They held that the error was harmless. Now, this court applies the Breck standard. And I want to point to four main things that show why this error wasn't harmless. One of them was just considering the length of deliberations in this case, all penalty phase evidence was presented in one day, and the only defense evidence was Mr. Kirkpatrick's seven-page testimony. However, the jury deliberated two days at penalty, clearly showing that they were struggling to reach a verdict. Second, the circumstances of the crime, which is one of the aggravating factors, were not very weighty in this case. Again, just taking a look at what happened at the guilt phase, jurors deliberated for five days. They asked for four readbacks of testimony. And this court has indicated that shows a struggle to reach a decision. Third, there was a note that the jurors sent to the judge asking about the definition of aggravating and mitigating circumstances, showing that they, again, were having problems and struggling with this decision. The note was answered by saying, you've been given all the definitions that you need, which reinforces the problem, really, because they had been told to consider these two factors as aggravators. When the prosecutor focused on these threats during his closing argument, he four times referred to the poisoning of dogs and only one time talked about the threats were in the context of a threat to the woman's child, Ms. Johnson's daughter. He focused on the dog poisoning. And we know that when a prosecutor focuses on something during closing argument, it indicates that it's an important piece of the case. And finally, when the trial judge considered the motion to modify the verdict, he specifically listed the poisoning of dogs as an aggravating factor, indicating that if he thought it was worth mentioning, the jurors probably paid attention to it as well. So because the question is, did this jury, was there a substantial and a jurious effect on the verdict, looking at it through the eyes of this jury, and we submit that, yes, there was. So your time is ticking. Could you go to the, it just seems to me the point here about harmlessness is there's nothing wrong with them considering that as an aggregating factor, the threats to her daughter. To the daughter, there's not, but. Right, and so why isn't this just, and given that that was horrendous, I think, by any measure, why doesn't this pale in comparison? Why should we decide that this, the threat about the dog poisoning, or the dog poisoning or the threats to property had some kind of substantial and injurious effect? And just for the reasons that I listed, Your Honor, when it shows that the jurors were struggling to reach a verdict, anything could have tipped them over the edge at that point, and perhaps it was these two non-statutory aggravating factors that they should not have been allowed to consider. But that should leave us with grave doubt, because they were so, because it took them so long to deliberate. That's one of the factors, yes, Your Honor. Okay. But in California, it's not a matter of whether there are. Incorrect aggravating factors that taints all the other aggravating factors. You can take the tainted aggravating factors and put them one side and then list the other aggravating factors, such as the barbarities that he subjected two young men to. One was a forced oral sex. The other was putting the man's head in a toilet. And then this was not just one murder. This was two murders. So when you take those aggravating, those, I think you'll say, you'll agree with me, are all valid aggravating factors. What a California jury is told is you take the aggravating factors, the valid aggravating factors, and the mitigating evidence, which is very slight, and you weigh them. If the aggravating factors outweigh the mitigating factors, you shall impose a death penalty. Isn't that so? If we take the two aggravating factors, which are admittedly erroneous, is there some case that says they taint the other aggravating factors? No, Your Honor. They don't taint them. But it really isn't a mechanistic counting. It's a moralistic judgment. And given the fact that there was little to no mitigating evidence, the fact that jurors were still struggling for two days to arrive at a penalty verdict demonstrates that this wasn't an open and shut decision on the life or death question. And so going back to a jury and taking away the aggregating factors that they weren't allowed to consider, there is a substantial chance that they would have reached a different result. That's not Brecht v. Abramson's asubstantial chance. Sorry. It is, did it have a substantial and injurious effect on the verdict? And so what I'm saying is these factors had a substantial and injurious effect. Thank you, Your Honor. All right. Do you want to reserve the rest of your time? Yes. Thank you, Your Honor. Thank you. Good morning. Say your name. Scott Hayward on behalf of the State. So you've seen what we're focused in on today, and that's looking at this, the waiver issue through 2254E1. Is there clear and convincing evidence to rebut the presumption that the State courts, California Supreme Court's finding was correct? The answer to that question is no. But I want to back up just a second before we get to discussing whether or not they've met their burden of establishing by clear and convincing evidence the California Supreme Court's factual determinations were wrong. 2254E1 is very clear in terms of what the obligations are of the Federal habeas court in reviewing the factual determinations. They're presumed correct. We know. And that doesn't go into the quality of the State court's determination. That's just a no-blanket. This Court has to accept their factual determinations if they made them, unless it's rebutted by clear and convincing evidence. So what evidence supports the California Supreme Court's finding that the waiver was knowing and intelligent, please? One thing is, is that Mr. Kirkpatrick told the referee that his goal was to be determined competent so that he could end State court review. That was something that he specifically said. And I understand that in the waiver that he submitted, he had indicated that he wanted to withdraw his State habeas corpus petition and proceed to execution. But it became clear during the course of the hearing that the second part was not something that he wanted to do. All he was interested in doing was waiving what was his fourth State habeas corpus petition. That's all he wanted to do. Okay. Wait a minute. So we're just going through. The evidence that supports the State court's finding is that he told the referee that his goal was to be found competent so he could pursue what? So that he could vacate the State habeas corpus proceeding. Okay. So you've got to do that. But if he did that, if he did vacate the State habeas corpus proceeding, what would have happened to the Federal habeas corpus proceeding? Nothing. I mean, he wouldn't have been able to raise any of the claims in that fourth petition because they're all unexhausted, but it had no impact on whether Judge Keller could continue with the Federal proceeding, which is what happened. There's additional evidence. At the first day of the hearing, when they were kind of discussing what was going to happen, Mr. Kirkpatrick was in court. And my predecessor in this case specifically advised him that at least one of the consequences of foregoing review of his fourth collateral review petition was going to be that he wouldn't exhaust those claims and he wouldn't be able to pursue them in Federal court. Could you give me the ER site, please? It's 1134 to 35. Okay. And after he was advised of that by the prior deputy on this case, Mr. Kirkpatrick's response was, I appreciate that. If you withdraw that, then it won't have the impact of doing the exhaustion because it will be withdrawn. There is a potential that when you go we go back to Judge Keller's courtroom and you withdraw it, you can't raise it there again. There is a possibility he might do that. Mr. Kirkpatrick, I can appreciate that. Precisely. Precisely, Your Honor. So that demonstrates that Mr. Kirkpatrick is at least indicating understanding of one of the consequences of refusing to forego forward with his or foregoing pursuit of relief in his fourth petition. And that date was before he refused to come to the hearing, right? Correct. I think that that was the initial meeting kind of of the parties and Mr. Kirkpatrick was still participating at that time. Okay. There is additional evidence in the context of being examined by Dr. McEwen. He specifically told her that he didn't want to end his litigation. He just wanted new lawyers. He wanted new lawyers and he wanted to do it his way. Right. She found no evidence of mental impairment that would prohibit his choice from being knowing, intelligent, and voluntary. And that's critical. I think opposing counsel has conceded that nobody is really challenging competency here. And that's what Judge or forgive me, that's what the psychiatrist was tasked with. Right? So we're really focusing on knowing and intelligence. Correct. Okay? Correct. And so the way you interpret, I don't mean to be giving, finishing your sentences for you, but he says he doesn't want to end his litigation. And the reason you think that supports your view is that you think he intended to pursue his petition in Federal court only? It's tough to know exactly what Mr. Kirkpatrick wanted to do. But because once he got into Federal court, he tried to end those proceedings as well. Well, but I'm just trying to figure out why. I'm not trying to be difficult, but we're all working at trying to figure out this statement that he did not want to end his litigation. How is that supportive of your position? He didn't want to end complete review. He just wanted to end what was happening in State court. Okay. That's what I asked. Okay. Yes. Another quote from Dr. McEwen, which I think is important, was that she noted that Mr. Kirkpatrick was intelligent, self-determined, oriented, consistent, deliberate, and unwavering in his positions, which is at 1112 in the excerpts of record. Well, but the unwavering in his positions is the whole ballgame. Much of what you just read goes to competence, and I think that's not challenged. I'm just trying to figure out what to do with the contrary statements where he says he wants to go forward with this gun claim in particular. What do we do with that? Well, I mean, the question for the California Supreme Court, based on everything that was in the record, was whether, you know, it could determine that it was unknowing and intelligent. I think that's right. And that's why I'm asking you what, since they've got the referee's report saying he can't agree on that. Yeah. And so they relied on what? They relied on everything else that was in the record. I mean, and they relied on, and this is an important thing, because one of the things that Dr. McEwen also said is that she believed that everything that Mr. Kirkpatrick was doing was aimed at taking more control over his life, that even if that didn't mean that he was necessarily making sensible decisions, they were his decisions. He understood the consequences of what he was doing. Okay. And so when you say, I think this is, we're getting right to it now, and you have 23 minutes left. So when you said the California Supreme Court couldn't, surely couldn't rely on the referee's report because it went the other way. So when you say they relied on everything else in the record, it would be enormously helpful to me if you could point out where you want me to look for these ER sites. Initially, Your Honor, I disagree that the referee went the other way. All he said is that he couldn't do it. The California Supreme Court made this determination in the first instance. Yes, that's what I'm saying. So you're not arguing, and again, I'm not trying to be combative. I'm really trying to get your help here, because you'll know the record very well. It seems to me clearly to be the case that the California Supreme Court couldn't rely on the referee's report to support their finding of knowing and intelligent. Do you agree with that? Yes. Okay. So you said they relied on the California Supreme Court relied on everything else in the record. And so I'm asking you, if you give me those ER sites, exactly where should we look? I think it's the stuff that we've just talked about, Your Honor. And I don't know that there's a whole lot more than that, and I don't think that there needs to be any more than that. The fact that he said that he wanted to vacate, he wanted to be competent and vacate his appeal was at the record at 1133. That he understood that if he withdrew his petition, that he would not be able to proceed to Federal court, because we would argue that all those claims were unexhausted. That's at the record at 1134 and 1135. Uh-huh. That he told that the doctor found no evidence of mental impairment, which, again, I know we've talked about that going to competence more. And that he wanted to take control over his case. That all of that was enough. And that point is at, I think I have that ER site. But do you have it handy? Unfortunately, Your Honor, it's the one that I don't have. That's the way it goes. That's why I asked. I'm sure this is Murphy's law. But I think I have it in my notes, if you don't. Okay. But those are the points you want us to look to. Yeah. That was all sufficient for the California Supreme Court to make its determination. And that at that point in time, simply because the record might support, you know, counter findings doesn't allow Mr. Kirkpatrick to demonstrate that that was erroneous on a clear and convincing standard. So long as there's enough for the California Supreme Court to do it, they would have been compelled to come back in Federal court and say, you know what, that decision is unsupportable. And here's our clear and convincing evidence that rebutts it. And that never happened. So once he waived those claims and the district court, assuming it was valid, as the California Supreme Court found, the district court dismissed all those claims as unexhausted. Correct.  So the only claims that are before us are the waiver claim and the narrowing claims. You know, the section 190, not aggravating factors. Correct. Can I ask whether you think that the Fahey case out of the Third Circuit is distinguishable? Well, I want to back up for a second, Your Honor, because if it's okay. And I'm going to answer your question. I know it's a big faux pas to not do that. But I struggle with the notion, because it was kind of glossed over, that the Federal Constitution applies at all with respect to whether Mr. Kirkpatrick had to be competent or provide a knowing and voluntary and intelligent waiver of his Fourth State habeas petition. The issue of whether a. What? I don't think that. You don't think it had to be knowing, voluntary and intelligent? Not under the Federal Constitution. I absolutely don't. And I don't think that there's any case that says so. What do you think is the appropriate standard, counsel? I think that it's perfectly okay that the California Supreme Court used that test as a matter of State practice. I don't think it was compelled to do it because there's no constitutional issue involved. There's no legitimate Federal interest in a State inmate's pursuit of his Fourth State habeas corpus petition, much less his desire to waive it. If you reversed it and looked at it in the context of a Federal habeas corpus petition, Your Honor, where we have the strict second and successive petition bar. If an inmate, after being finished with his Federal habeas corpus litigation here, filed a second or successive petition, and then before we got around to litigating whether or not he met the very high standard to continue to pursue it, he decided to withdraw that petition, I can't imagine that this Court or any Federal court would Mr. Hayward, just a moment. The effect of withdrawing the habeas petition is to leave claims unexhausted so they can't be raised in the Federal tribunal. Correct. Isn't that a Federal interest? I mean, that's When it comes back to Federal court, the exhaustion issue is certainly a Federal interest. But before it comes back to that, simply the quality of what was happening in the California Supreme Court doesn't raise a legitimate Federal interest. And I will cite the Court to two things, two things that I think will help in that respect. In Whitmore v. Arkansas, which had to do with an inmate who was, he'd waived his direct appeal, so he was convicted in State court and then waived his direct appeal. Another inmate on his behalf tried to get next friend status so that he could pursue it on his behalf. And one of the things that the United States Supreme Court said when resolving that issue, and I'm going to quote from the case, they said that we're not faced here with the question whether a hearing on mental competency is required by the United States Constitution whenever a capital defendant desires to terminate further proceedings. And then went on to note that as a matter of State law, the State of Arkansas held that hearing, and they were satisfied with the process that was afforded in that hearing and the result. And they applied 2254 E-1's predecessor to that, which was D-8, which is essentially the same thing. Ginsburg. Can you name that case again? That's Whitmore v. Arkansas. And again, I raise that because the Supreme Court specifically went on record and said it wasn't making the determination that the Constitution compelled it, because it didn't have to, because the State. Let me go back, because I don't have this in my materials, but so the California Supreme Court, when it received the waiver, the waiver form, the punitive waiver form, why, if it didn't have to, what was the standard? I don't have that order in front of me, but what was the standard the California Supreme Court used to refer this to the referee and ask? What the California Supreme Court said is that it were mandated for a hearing consistent with Whitmore v. Arkansas and Reese v. Payton, which was the other case that it said, to determine whether he was competent and whether his waiver was knowing, intelligent, and voluntary. Mr. Hayward, I remember Whitmore v. Arkansas, because we discussed that in the famous case of Naruto. Didn't that go off on the basis of standing, that one inmate didn't have standing to bring forward the appeal of another inmate? That was unquestionably the holding of the court, Your Honor, unquestionably. But my point is, in terms of the case, because they did use the knowing, voluntary, intelligent test. The State of Arkansas employed the same test that California did here. But once the California Supreme Court adopted that standard, right, as a State court matter, and they directed their trustee, excuse me, referee to go off and make those findings a fact, it seems to me that we're in 2254e land, which is whether they have adequate support for their finding. That's the standard they chose. I agree with that 100 percent. Okay. So could you tell me then, it seems to me if we go off on the analysis you're suggesting, we're going to create a circuit split with the Third Circuit in Fahey, if that's how you pronounce that case, and I want to give you a chance to respond to that question. Is that case distinguishable? What do we do with that case? I think that this Court is – I would ignore it, and the reason why I would ignore it is because we have cases in this circuit which are much more accurate and better to direct where we go. The Dennis case, for example. Okay. So saying that we ignore it doesn't really answer the question about whether we would be creating a circuit split by doing so. What's your response to that, please? We'd be creating a circuit split by specifically doing what, Your Honor? By following Fahey. If we can't distinguish it, what do we do with that? It's not binding. I'm not suggesting it's binding. I understand. My question is are we creating a split? If the – I guess I'm still unclear in terms on what the split would be. Well, can you distinguish Fahey? I can't. I struggle to, and that's why I'm asking. But Fahey held again. I don't remember. Distinguish it from this case? Yes. One of the things is, is that we're talking about a Fourth State habeas petition in case, and that's kind of what I was just talking about. To me, that's a monumental deal. They had an equivocal – I just read it from when your colleague was at the podium, that in that case, they thought they had an equivocal – a record of equivocation is what they said, a record of equivocation, because in that case, it was a stark record. The person said he wanted to waive his petition. He then signed an affidavit with the vice of counsel saying as much, but he went the other way. He had back and forth. Of course, Mr. Kirkpatrick never did that. I mean, that was a point that Judge Wardlaw brought out, is that he never went back on his request to waive. Well, what we've got, though, is, again, I'm just trying to play devil's advocate. What we have is he's told, and you've given us that, he's told on record at the status hearing, this is what's going to happen if you don't show up and cooperate, and then he doesn't show up and cooperate. He also told the psychiatrist he intended to pursue some of the claims. And I'm trying to figure out, I'm truly just probing this. Is that a record of equivocation, like they had in Fahy, because he's given both signals, or what is it? No. I would think that for there to be true equivocation, he would have to go back on the waiver, that he would have to withdraw the waiver. At some point in time, he would say, you know what, I've changed my mind. There would have to be some evidence for that. Have you ever said that? Never. Never. And we're talking about everybody in this room, at least the judges and his lawyers and myself, know that if there's something that Mr. Kirkpatrick wants or he's dissatisfied with, he's not shy about alerting the court to that or his lawyers to that or somebody. Right. And part of our challenge, I think, is trying to limit ourselves to what the California Supreme Court knew at the time when we decided whether or not they're finding a fact was unreasonable, because we certainly have a record since then, since that time. Well, it's not whether they're finding it with respect, Your Honor. It's not whether they're finding a fact was unreasonable. It's whether they've rebutted it with clear and convincing evidence. I agree with that. I agree with that. I'm just speaking in shorthand and trying to get you to focus on your points. And I think you've given us the strongest points you've got for why you think it's adequately supported, unless there's more on that point. The final thing that I would point out is I think that no matter what, at the end of the day, those claims are still unexhausted. Even if this Court decided that it could review it and somehow got past E, I'm not sure how the remedy would ever be that the Federal court should sit in the first instance and review a State inmate's constitutional claims. We would have been entitled to, had he stayed in, you know, when you're talking about fair presentation and exhaustion, at a minimum, to give the State court the opportunity to address and correct any alleged errors, at a minimum, that means file your petition and leave it there. After that, it's up to the court. Once you withdrew it, right or wrong, those claims are unexhausted. We were done. Unless it's facially – unless the waiver, his waiver is facially invalid in light of the fact that the referee said, I can't tell you whether it was knowing and intelligent, because the California Supreme Court did have the option of doing what the district court did, which is just ignore him and go on to the merits of the claim. It could have done that. That's what the opposing counsel is going to say. And since you don't have another chance at the podium, do you want to respond to that? Sure. Yeah, absolutely, the California Supreme Court could have done that. And it was up – you know, they went this way. They decided that the record supported what he was asking for, which, again, was waiving a fourth State habeas corpus petition. And I keep saying that because I think it's important. You're talking about something – he had already had three of them. This is so far down the line that I think that if the State court wanted to, on his letter alone, they could have just granted it and said it's withdrawn. I think your point is a good one. I asked myself that question. What if they hadn't sent a referee out? What if they had looked at the letter, which is a one-sentence letter, and said this is unambiguous, he says he wants to waive it, and had just gone with that? It seems to me there would be a stronger ground. Once they appointed the referee, though, and he came back and said it's – I can't tell you it's knowing and intelligent. It gets dicier, doesn't it? I don't – I don't believe it gets dicier at all, because, again, even though – you know, the referee was a trial judge, and Judge Keller is a trial judge, and I think that they're very, very used to, when taking waivers, of having the person who's waiving the right before them so they can do, you know, the back and forth. The California Supreme Court wasn't obligated to do that. We talked about how there's no formal colloquy requirement. They didn't have to do that. And they felt very comfortable, based on the record as it existed, in making that determination for themselves in the first instance. They didn't need to have the colloquy. They felt that there was enough in there to do them. My point on the waiver form itself, that they just could have granted that, has to do with the fact that this was a fourth petition. And in California, at least up until Prop 66 passed, nothing would have stopped him from going back. He could have gone – he could have changed his mind the next day and refiled that petition, and he would have been in the exact same place. My concern is with the precedent of what it's going to take to substantiate a finding of knowing, voluntary, and intelligent going forward. That is my concern. I don't think that the – what that means, what those terms mean, doesn't change just because the California Supreme Court opted to do it as a matter of State practice as opposed to the other. It was your first response to that, you think they didn't have to do it? They absolutely didn't have to do it. Okay. And then your second response is, since they adopted that mantle, they took on the mantle, I guess you would agree they did that expressly, that the record was sufficient because of these other points in the record. Yes. Because of everything that we previously discussed, it was. And they were entitled to make that call, and now E-1 applies, and it hasn't been rebutted, and that's the end of it. The claims are unexhausted. Relying on the standard review in E-1, that it's rebuttable, and they have some evidence on their side of the scale that it's not sufficient. Certainly. Certainly. Quickly, Your Honor, if I may, because I'm running a little short on time, but I just want to talk briefly about the substantive issue for which the COA was granted. I think that one significant factor is that at the time the California Supreme Court resolved this, Brown v. Sanders had not been decided. And that's the case, came 12 years later. Brown v. Sanders is the case that said an error like this, if a State court instructs a penalty phase jury to consider evidence in aggravation when it really doesn't qualify, that that's going to be a constitutional problem. Did anybody do a Teague analysis? We did not argue Teague because the claim was denied on the merits. And this is at the case, and so we're entitled to de-deference, which that's the way that we went about it. The point is, before Brown v. Sanders, there was no clearly established law that compelled the California Supreme Court to decide this differently than it did. At that point in time, it was simply a matter of State law. It applied contrary to what my worthy opponents set forth, the harmless-beyond-a-reasonable-doubt test, which is the California Supreme Court said that when this type of error occurs, that they'll determine if there was no reasonable possibility that the error affected the verdict, that it's harmless. And that is the Chapman standard. That language comes directly from Chapman. So they did that, and under Davis v. Ayala, that's entitled to de-deference. And we submit that it was certainly a reasonable decision. The fact that the jury was told that it could consider that these – that the dogs were temporarily paralyzed in aggravation pales in comparison to the other admissible aggravating evidence, which includes the two brutal execution-style murders that he committed for $600 and change, the sexual assault against a teenage boy, the assault against another teenager, and the threats to Shirley Johnson's daughter, those are the reasons why he ended up being sentenced to death. I think that we can't take any more away from the fact that the juries took two days to consider that, other than that they were doing what their job was. Death penalty sentence is a very serious thing, and it's good that juries take their time to work that out. So I would ask this Court to affirm the district court's judgment with respect to the exhaustion issue and the substantive issue. Thank you. Thank you, counsel. Your Honors, I'd like to just make three quick points, if I may. First, I would like to direct this Court's attention to the Fahy case, specifically Pinpoint Site 183, and there, where they're also applying 2254E1. The Court states that they have determined when you can't find that a valid waiver has been made based on procedural infirmities, substantive deficiencies, and an insufficient probing into a defendant's knowledge of the rights he's waiving, then these can't even be considered factual determinations to which a presumption of correctness applies. The second point I'd like to make is I would like to direct the Court's attention to ER Sites 1110 and 1201-1202. What's 1201-1202? That is where Mr. Kirkpatrick told the referee he was aware of a police report regarding the purchased murder weapon and asked if it was in his appeal, and he says the same thing to Dr. McEwen at 1111. Based on that, we know that he's not just trying to speed the process to get back into federal court to win relief on these claims, because these claims are only in the exhaustion petition. And finally, just quickly addressing the certified claim, Stringer v. Black is clearly established federal law from 1992, which predated the California Supreme Court's denial of Mr. Kirkpatrick's direct appeal. And that case specifically says — I'm sorry, Your Honors — that weighing an invalid factor skews the weighing process, and you must apply a constitutional harmless error analysis under the Eighth Amendment. Now, I submitted a 28J letter back before the first argument in this case that points to Federley, and Federley also cites to Stringer and Furman for a similar claim to the certified claim. Unless there are further questions, I'll submit, Your Honor. Your Honors. I thank counsel for their excellent arguments today. And this case, Kirkpatrick v. Chappell, will be submitted, and this session of the court is adjourned for today.
judges: Wardlaw, Bea, Christen